IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>MARK ROBERT PENMAN,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 1:15-cr-00057-RJS<br><br>Judge Robert J. Shelby |

On July 7, 2015, police officers executed a search warrant on Defendant Mark Penman's RV, which was parked in the west driveway of a residence located at 143 West 2800 South in Bountiful, Utah. While executing the warrant, officers searched the RV, the residence, a nearby shed, and a green Saturn parked curbside in front of the residence. Mr. Penman now moves to suppress the evidence obtained from the search of the residence, the shed, and the green Saturn. Mr. Penman argues that the warrant lacked probable cause to search those places, and that no reasonable, well-trained officer would have relied on the defective warrant.

The parties agreed to submit the matter without the benefit of an evidentiary hearing. After carefully reviewing the parties' written materials and hearing the arguments of counsel, the court concludes that the state court judge who issued the search warrant had a substantial basis to find that the affidavit in support of the warrant supplied probable cause to search the residence and the structures and vehicles within its curtilage, including the shed. But because the green Saturn was not on the curtilage of the home, the evidence obtained from its search is excluded. Further, even if the warrant was not supported by probable cause, the court concludes that a reasonable, well-trained officer could have relied on the warrant in good faith to search the

1

residence and the shed.  Mr. Penman's Motion to Suppress is granted in part and denied in part.

## BACKGROUND

On July 15, 2015, Detective Russell Barton of the Davis Metro Narcotics Strike Force received information from the Bountiful Police Department about a concerned citizen's report. The identified citizen reported possible drug activity at 143 West 2800 South in Bountiful, Utah. The citizen stated that a large RV was parked in the west driveway of the residence, and that Mark Penman was suspected of living inside the RV.  The citizen also stated that Mr. Penman was possibly manufacturing and selling drugs from inside the RV, and that short-term foot and vehicle traffic was "often seen" coming and going from the residence and the RV.  The citizen further reported that an elderly man suffering from Alzheimer's advised that Mr. Penman said he was producing THC oil in the RV to help his Alzheimer's-afflicted father.  Two days later, on June 17, 2015, the citizen reported to Detective Barton that Mr. Penman was seen carrying two glass vials into the RV.  Detective Barton also received information from a confidential informant that Mr. Penman had talked several months earlier about making THC oil.

After receiving this information, Detective Barton conducted physical surveillance on 143 West 2800 South.  Detective Barton saw short-term foot and vehicle traffic at the address during all hours of the day and night.  And he saw numerous unidentified people make contact with Mr. Penman at the entrance to the RV parked in the west driveway of the residence.  He further saw Mr. Penman leave the RV and walk into the residence on numerous occasions, and saw a woman named Lori Penman make frequent visits to the RV for extended periods of time. Mr. Penman's elderly father was also seen in front of the residence sitting in a chair near the house on several different occasions.

On June 29, 2015, a confidential informant working with Detective Barton arranged to

make a controlled marijuana buy from Mr. Penman. Detective Barton met with the informant before he made the buy to give him funds and an audio transmitting and recording device.

During the early morning hours of June 30, 2015, the informant walked to 143 West 2800 South. The informant met Mr. and Ms. Penman at the RV parked in the driveway. Once inside the RV, the informant received in exchange for one-hundred dollars a baggie containing 18.3 grams of marijuana, five cookies suspected of containing marijuana or marijuana extract, and a jelly/wax substance that was also suspected of containing marijuana or marijuana extract. The informant left after making the exchange, and he later confirmed that a green Saturn was parked curbside near the RV during the transaction.

On July 6, 2015, Detective Barton included the facts described above in an affidavit for a search warrant. Detective Barton also included a detailed description of the residence, the RV, and the property at 143 West 2800 South in Bountiful. And he provided a summary of his over thirteen-years' experience as a police officer, including his over two-years' experience on the Davis Metro Narcotics Strike Force and his receipt of specialized training in controlled substance identification and interdiction.

Detective Barton stated in his affidavit that he sought a warrant to search Mr. Penman, Ms. Penman, the residence, the RV, and any structures and vehicles that may be on the curtilage of the property. He also stated that he believed evidence of possessing and distributing a controlled substance would be found in those places. A state judge reviewed the affidavit and issued a warrant to search the requested people and places.

Detective Barton and other officers executed the warrant on July 7, 2015. When they arrived at the premises, they found Mr. Penman working on the green Saturn parked on the curb in front of the home. The officers then searched the RV and found raw marijuana, multiple

bottles of completed THC oil, and THC oil in various stages of production. They also found a bottle of THC oil in the residence, and a plastic bag containing numerous rounds of 9mm ammunition in the Saturn. The officers likewise found two rifles and a box of 9mm ammunition in a shed behind the residence.

Mr. Penman was then arrested, and a grand jury later returned a three count indictment against him for knowingly and intentionally distributing marijuana, being a felon in possession of a firearm, and knowingly and intentionally possessing less than one kilogram of a mixture or substance containing a Schedule I controlled substance with the intent to distribute.

## ANALYSIS

Mr. Penman now moves the court to suppress the evidence obtained from the search of the residence, the shed, and the green Saturn. Mr. Penman argues, first, that Detective Barton's affidavit in support of the search warrant did not provide probable cause to search the residence, the shed, or the Saturn, and, second, that the execution of the search warrant did not fall within the good-faith exception to the Fourth Amendment's exclusionary rule. The court addresses each argument in turn.[1]

### I. Sufficiency of the Affidavit in Support of Probable Cause

To issue a search warrant consistent with the Fourth Amendment, a magistrate judge must determine that probable cause supporting a search exists.[2] Probable cause "requires a nexus between suspected criminal activity and the place to be searched."[3] An affidavit establishes

---

[1] At oral argument, the court inquired whether Mr. Penman has standing to challenge the search of the residence and the green Saturn. The court then scheduled an evidentiary hearing to receive evidence related to Mr. Penman's standing, but indicated that it would vacate the hearing if the United States stipulates to standing or if Mr. Penman withdraws his Motion. (Dkt. 24.) The United States eventually stipulated that Mr. Penman has standing to challenge the search of the residence and the green Saturn. (Dkt. 25.) As a result, the court does not address the issue and assumes for the purpose of analyzing this Motion that Mr. Penman has standing.
[2] *United States v. Roach*, 582 F.3d 1192, 1200 (10th Cir. 2009).
[3] *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000) (citation omitted) (internal quotation marks omitted).

probable cause if it contains facts that "would lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime will be found in a particular place."[4]

When evaluating the sufficiency of an affidavit, the magistrate must "examine the totality of the circumstances set forth in the affidavit, including an informant's veracity and basis of knowledge."[5] The magistrate must also be mindful that probable cause is a "fluid concept" that deals with probabilities and practical considerations—not hard certainties or technical standards used by "legal technicians."[6] Under this practical-based standard, "the nexus between the place to be searched and the evidence sought may be established through normal inferences about the location of evidence."[7]

If, after conducting this review, a magistrate finds that probable cause exists to issue a search warrant, that finding is thereafter entitled to "great deference."[8] When that finding is later challenged by someone affected by a search authorized by the warrant, reviewing courts are "limited to ensuring that the magistrate's [probable cause] determination had a substantial basis."[9] This deferential standard means that courts considering post-search challenges to the adequacy of the probable cause finding made by the issuing just must "resolve 'doubtful or marginal cases' by deferring to [the] magistrate judge's determination of probable cause."[10]

Here, Mr. Penman concedes that Detective Barton's affidavit establishes probable cause to search the RV. But Mr. Penman argues that the affidavit fails to create a nexus between any suspected criminal activity and the residence, the shed, or the green Saturn, and that the affidavit does not explain why Detective Barton believed the items sought would be found in those places.

---

[4] *United States v. Cantu*, 405 F.3d 1173, 1176 (10th Cir. 2005) (citation omitted) (internal quotation marks omitted).
[5] *Danhauer*, 229 F.3d at 1006 (citing *Illinois v. Gates*, 462 U.S. 212, 238 (1983)).
[6] *Gates*, 462 U.S. at 231–32.
[7] *United States v. Biglow*, 562 F.3d 1272, 1280 (10th Cir. 2009) (citation omitted) (internal quotation marks omitted).
[8] *Cantu*, 405 F.3d at 1176.
[9] *Id.* at 1176–77.
[10] *Biglow*, 562 F.3d at 1282 (quoting *Massachusetts v. Upton*, 466 U.S. 727, 734 (1984)).

For its part, the United States argues that the state judge had a substantial basis to conclude that the affidavit supplied probable cause to search the residence and all of the structures and vehicles on its curtilage, including the shed and the green Saturn. The court addresses the search of the residence, the shed, and the green Saturn in turn.

### A. The Residence

Detective Barton's affidavit contains enough facts to support the state judge's conclusion that there was a nexus between the suspected criminal activity and the residence. Detective Barton received a tip from an identified citizen concerning possible drug activity at the address. The citizen reported short-term foot and vehicle traffic at the residence and the RV, in which Mr. Penman was suspected of making and selling drugs. Detective Barton also received a tip from a confidential informant that Mr. Penman had talked several months earlier about making THC oil.

Detective Barton corroborated some of this information through his own investigation. While personally conducting surveillance at the premises, Detective Barton saw short-term foot and vehicle traffic at the address during all hours of the day and night. He saw Mr. Penman leave the RV and walk into the residence numerous times, and observed Mr. Penman's father sitting in a chair near the house on several occasions. Detective Barton then confirmed that Mr. Penman possessed, produced, and sold drugs on the premises when a confidential informant bought marijuana and illegal edibles from Mr. Penman in the RV.

Detective Barton listed these facts in his warrant affidavit. He also included a detailed description of the residence; a summary of his over thirteen-years' experience as a police officer; and a statement that he believed he would find evidence of illegal drug activity in the residence, the RV, and the other structures and vehicles in the surrounding curtilage.[11]

---

[11] *See United States v. Villanueva*, -- F.3d --, 2016 WL 1730645, at *8 (10th Cir. May 2, 2016) ("It is undisputed that a law enforcement agent's opinion, based upon his professional expertise, that evidence of illegal activity will be

6

Taken together, these facts provide probable cause that Mr. Penman made and sold THC oil, marijuana, and other related items in the RV, and lead to the reasonable inference that there is a fair probability that evidence of Mr. Penman's operation would be found in the residence.[12] This inference is bolstered by the practical realities of the situation: the residence was in close proximity to the RV, the RV was likely too insecure and too small to store drugs and large quantities of cash, and Mr. Penman was seen on several occasions going back and forth between the RV and the residence.

Mr. Penman contends that probable cause to search the residence was lacking because Detective Barton was unable to corroborate the concerned citizen's statement that short-term foot and vehicle traffic was often seen coming and going from the residence. To be sure, Detective Barton stated only that he saw short-term foot and vehicle traffic at the address—not specifically at the residence. But where "an informant is right about some things, he is more probably right about other facts."[13] That is the case here. Detective Barton corroborated the report that there was short-term foot and vehicle traffic at the RV, and the report that Mr. Penman was making, possessing, and selling THC oil, marijuana, and related items in the RV. Detective Barton also saw Mr. Penman leave the RV and walk into the residence on numerous occasions. That Detective Barton did not corroborate the report that short-term foot and vehicle traffic is often seen at the residence does not sever the link between the residence and the suspected criminal activity.

Mr. Penman also notes that it is unclear whether the concerned citizen him- or herself saw

---

found in the place to be searched, is entitled to consideration in our determination of whether probable cause existed at the time a warrant issued." (citation omitted) (internal quotation marks omitted)).
[12] *See United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004) (stating that probable cause likely would have existed to search a residence if the supporting affidavit included facts showing that the two men were seen walking on the beaten paths that led from the marijuana patches to the door of the residence).
[13] *Gates*, 462 U.S. at 244 (citation omitted) (internal quotation marks omitted).

the short-term foot and vehicle traffic coming and going from the residence and the RV. Indeed, the citizen stated in the passive voice that short-term foot and vehicle traffic was "often seen" coming and going from the residence. This certainly bears on the veracity of the citizen's report. Yet, "[w]hen there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant."[14] As explained above, Detective Barton sufficiently corroborated the citizen's report through other means.

Lastly, Mr. Penman argues that although Detective Barton saw Mr. Penman leave the RV and walk into the residence numerous times, this merely shows that Mr. Penman had access to the residence and some undefined relationship with its resident. But Mr. Penman overlooks that "innocent behavior frequently will provide the basis for a showing of probable cause."[15] In this case, Mr. Penman's possibly innocent behavior moving back and forth between the RV and the residence must be viewed in the context of all the information presented to the state judge for consideration in Detective Barton's affidavit, including: (1) the citizen's report of possible drug activity at the address, and short-term foot and vehicle traffic often seen coming and going from the residence and the RV; (2) Detective Barton's personal surveillance revealing short-term foot and vehicle traffic at the address during all hours of the day and night; (3) evidence that Mr. Penman was engaged in illegal drug manufacturing and sale through the controlled buy using a confidential informant; and (4) reports that Mr. Penman was manufacturing and providing illegal THC oil for his elderly father, who was seen sitting in a chair outside the residence on several different occasions. The court concludes that there was a substantial basis for the state judge to find probable cause to search the residence. To conclude otherwise would conflict with the Supreme Court's emphasis on probabilities and practical considerations attendant to probable

---

[14] *Danhauer*, 229 F.3d at 1006.
[15] *Id.* at 243 n.13; *see also Biglow*, 562 F.3d at 1281 (noting that "innocent conduct will inevitably support some showings of probable cause").

cause determinations, as well as the Court's instruction that hard certainties are not required.[16]

### B. The Shed

Similarly, Detective Barton and the other officers lawfully searched the shed behind the residence. A warrant authorizing the search of certain premises, including a residence on the premises, also authorizes the search of outbuildings within the curtilage of the residence.[17] Here, the warrant authorized officers to search the residence, and it is clear that the shed is part of the curtilage.[18] As a result, the warrant authorized the officers to search the shed.

### C. The Green Saturn

The warrant, however, did not authorize the officers to search the green Saturn parked on the curb in front of the residence. "A search warrant authorizing a search of a certain premises generally includes any vehicles located within its curtilage if the objects of the search might be located" in those vehicles.[19] The warrant here authorized a search of vehicles found within the curtilage of the residence. The question presented is whether the Saturn was within the curtilage of the residence when it was searched by law enforcement officials.

The curtilage is "the area immediately surrounding and associated with the home,"[20] and where "intimate activity associated with the sanctity of a man's home and the privacies of life" is conducted.[21] Courts ordinarily consider four factors when determining whether an area falls within the curtilage of a home: "(1) the proximity of the area to the house; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the use to which the area is

---

[16] *See Gates*, 462 U.S. at 231–32.
[17] *See United States v. Earls*, 42 F.3d 1321, 1327 (10th Cir. 1997); *see also United States v. Gorman*, 104 F.3d 272, 275 (9th Cir. 1996) ("Every published opinion addressing the issue has concluded that a warrant authorizing the search of a residence automatically authorizes a search of the residence's curtilage.").
[18] *See Earls*, 42 F.3d at 1326–27 (holding that a warrant authorizing the search of a residence also authorized the search of a detached garage, a detached office, and a shed within the curtilage of the residence because those places "are the type of buildings which are ordinarily a part of residential property").
[19] *United States v. Gottschalk*, 915 F.2d 1459, 1461 (10th Cir. 1990).
[20] *Florida v. Jardines*, 133 S. Ct. 1409, 1414 (2013) (citation omitted) (internal quotation marks omitted).
[21] *United States v. Dunn*, 480 U.S. 294, 300 (1987).

put; and (4) the steps taken by the resident to protect the area from observation."[22] These factors are merely "analytical tools" to guide a decision that is fact intensive.[23]

Although the parties have not presented evidence explicitly touching on any of the four factors, the court concludes that the green Saturn was not parked within the residence's curtilage when the officers executed the warrant. The vehicle was parked on the curb on a public street. And there is no indication that Mr. Penman or his father took any steps to protect the area from observation. Nor is there any indication that "intimate activity" occurred on the curb in front of the residence. The green Saturn was not within the curtilage of the residence, and its search was not permitted by the warrant. The evidence obtained from the green Saturn is suppressed.

In sum, the state judge had a substantial basis to find that Detective Barton's affidavit contained enough facts to create a nexus between the residence and suspected criminal activity. As a result, there was probable cause to search the residence and the shed within the curtilage. But because the green Saturn was not within the curtilage, it was not permissibly searched.

## II. Applicability of the Good-Faith Exception[24]

Even if the search warrant was not supported by probable cause, the suppression remedy does not automatically apply.[25] The exclusionary rule is designed to protect Fourth Amendment rights through its deterrent effect, but it is not an individual right.[26] Courts apply the rule only when it "results in appreciable deterrence" and when "the benefits of deterrence [] outweigh the

---

[22] *United States v. Cousins*, 455 F.3d 1116, 1122 (10th Cir. 2006).
[23] *United States v. Long*, 176 F.3d 1304, 1308 (10th Cir. 1999) (citation omitted) (internal quotation marks omitted).
[24] The court does not address whether the search of the green Saturn falls within the good-faith exception. The United States' argument that the search of the green Saturn falls within the exception is premised on it being within the curtilage of the residence. Having concluded that the green Saturn was not within the curtilage when the officers executed the warrant, the court does not analyze whether there is an alternative basis for upholding its search.
[25] *Herring v. United States*, 555 U.S. 135, 140 (2009).
[26] *Id.* at 139–41.

costs" to the criminal justice system's truth-seeking function.[27] To trigger the rule, "police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."[28]

These principles are imbedded in the exclusionary rule's good-faith exception articulated in the Supreme Court's *United States v. Leon* decision.[29] Under the exception, the court need not suppress evidence seized pursuant to a defective warrant "if the executing officer acted with an objective good-faith belief that the warrant was properly issued by a neutral magistrate."[30] The exception creates a presumption "that when an officer relies upon a warrant, the officer is acting in good faith."[31] While the presumption is not absolute,[32] "[s]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness."[33] All that is required to establish good faith is a "'minimal nexus' . . . between the place to be searched and the suspected criminal activity."[34] Stated differently, a supporting affidavit need only provide "*some* factual basis connecting the place to be searched to the defendant or suspected criminal activity."[35]

That said, there are four situations where an officer could not have reasonably believed that a warrant was properly issued.[36] Only one of those situations is implicated here: where the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official

---

[27] *Id.* at 141; *see also United States v. Leon*, 468 U.S. 897, 906–07 (1984) (noting that "[a]n objectionable collateral consequence of [the exclusionary rule's] interference with the criminal justice system's truth-finding function is that some guilty defendants may go free or receive reduced sentences as a result of favorable plea bargains").
[28] *Herring*, 555 U.S. at 144.
[29] *See id.* at 140–42.
[30] *Danhauer*, 229 F.3d at 1006 (citing *Leon*, 468 U.S. at 922).
[31] *United States v. McKneely*, 6 F.3d 1447, 1454 (10th Cir. 1993) (citation omitted) (internal quotation marks omitted).
[32] *Id.*
[33] *Leon*, 468 U.S. at 922 (citation omitted) (internal quotation marks omitted).
[34] *Roach*, 582 F.3d at 1204.
[35] *United States v. Dutton*, 509 F. App'x 815, 818 (10th Cir. 2013) (unpublished) (quoting *United States v. Gonzales*, 399 F.3d 1225, 1231 (10th Cir. 2005)).
[36] *Danhauer*, 229 F.3d at 1007.

belief in its existence entirely unreasonable."[37] In applying this test, the court examines whether the affidavit is "devoid of factual support."[38] If so, "an officer cannot be said to have relied on [it] in good faith."[39] The United States bears the burden of proving that the officers' reliance on the warrant was objectively reasonable.[40]

Here, Detective Barton's affidavit contains enough factual support to create a minimal nexus between the residence and suspected criminal activity. Detective Barton included in his supporting affidavit the facts described above along with a detailed description of the residence and the premises. This is enough evidence to create a minimal nexus between the residence—including the shed within the curtilage—and suspected criminal activity.[41] Detective Barton's affidavit is not so "bare bones" or "lacking in indicia of probable cause to render official belief in its existence entirely unreasonable."[42]

Moreover, Detective Barton and the other officers involved did what they were supposed to do. Detective Barton learned that Mr. Penman was making, possessing, and selling marijuana and related products in the RV, and that Mr. Penman entered the residence numerous times while there was short-term foot and vehicle traffic at the address throughout the day and night. Instead of immediately searching the RV, the residence, and the shed, Detective Barton presented the evidence to a state judge and searched those places only upon the judge's approval. Further, Mr. Penman has presented no evidence of bad faith conduct by Detective Barton or the other officers

---

[37] *Id.* (quoting *Leon*, 468 U.S. at 923).
[38] *Id.* at 1006 (citation omitted) (internal quotation marks omitted).
[39] *Roach*, 582 F.3d at 1204 (citation omitted) (internal quotation marks omitted).
[40] *Id.*
[41] *See Carpenter*, 360 F.3d at 595–96 (finding that the officers searched a residence in good faith where the affidavit did not state that the residence belonged to the suspects, but did include facts showing that marijuana patches were near the residence and that a path connected the residence and the patches); *United States v. Van Shutters*, 163 F.3d 331, 336–38 (6th Cir. 1998) (holding that an officer searched a residence in in good faith where the affidavit did not state that the residence belonged to the suspect, but did detail the officer's counterfeiting investigation and specify that the residence was "available" to the suspect).
[42] *See Leon*, 468 U.S. at 923, 926.

such that any resulting deterrent effect would outweigh the costs to the criminal justice system's truth-seeking function.[43]

In sum, even if Detective Barton's affidavit did not supply probable cause to search the residence and the shed, Mr. Penman would not be entitled to the suppression remedy that he seeks with respect to those two places.

## CONCLUSION

For the reasons stated, Mr. Penman's Motion to Suppress is DENIED with respect to the residence and the shed, but is GRANTED with respect to the green Saturn. (Dkt. 16.)

SO ORDERED this 17th day of June, 2016.

BY THE COURT:

ROBERT J. SHELBY
United States District Judge

---

[43] *See United States v. Soderstrand*, 412 F.3d 1146, 1153–54 (10th Cir. 2005) (holding that the officers acted in good faith where they opened a safe only after they obtained it, preserved it, presented it to a magistrate, and the magistrate issued a warrant).